**UNITED STATES COURT OF APPEALS**
**Filed 12/23/96**              **TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.                                                    Case No. 95-1207

LESTER EUGENE FOWLER,                 (D.C. Nos. 94-CR-274-B,
                                                          95-B-518)
      Defendant-Appellant.        (District of Colorado)

---

**ORDER AND JUDGMENT**[*]

---

Before ANDERSON, BALDOCK, and HENRY, Circuit Judges.

---

Defendant Lester Eugene Fowler appeals from the denial of his motion under 28 U.S.C. § 2255.[1]  Mr. Fowler alleged in his § 2255 motion that the sentence he was serving for unlawful possession of a firearm by a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1), violated the United States Constitution.  Mr. Fowler's claim was based on his contention that he was not subject to the provisions of § 922(g)(1) because, although he had been previously convicted of a felony in Colorado, his civil rights had

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1]Initially, Mr. Fowler appealed pro se.  A panel of this court appointed counsel and set the case for oral argument.

been restored under Colorado law before he possessed the firearm in question. Mr. Fowler also contended that he had received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.

The district court held that the first of Mr. Fowler's claims was procedurally barred because he had failed to raise it on direct appeal and, in any event, that the claim failed on the merits. The court also observed that Mr. Fowler's counsel was competent. We have jurisdiction under 28 U.S.C. § 2255, and we affirm.

## BACKGROUND

On September 15, 1994 a federal grand jury returned an indictment charging Mr. Fowler with four counts relating to his participation in an armed robbery, including: unlawful possession of a firearm by a previously convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count I); affecting commerce through robbery of a Gart Brothers Sporting Goods store and taking thirty firearms by actual and threatened physical violence in violation of 18 U.S.C. § 1951(a) and (b) (Count II); use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) (Count III); and theft of thirty firearms in violation of 18 U.S.C. § 922(u) (Count IV). On the advice of his court-appointed counsel, Mr. Fowler entered into a plea agreement whereby he pleaded guilty to Counts I and III and agreed to assist the government with its investigation of the crime; in exchange, the government agreed to dismiss Counts II and IV of the indictment and to

2

request downward departures in sentencing on Counts I and III for substantial assistance and acceptance of responsibility.

In the plea agreement, Mr. Fowler admitted that he had engaged in the following conduct:

> On June 27, 1994 Mr. Fowler participated in an armed robbery of Gart Brothers Sporting Goods Store, a federally licensed firearms dealer located at 14401 East Exposition Avenue, Aurora, Colorado. The defendant who was armed with a firearm and an armed companion hid in the store until it was closed, whereupon they emerged and held two store employees at gunpoint. They forced the store manager to open the safe and the gun vault, and left the store with approximately $7500 in cash and 30 firearms which were a part of the store's firearms inventory. . . . Gart Brothers does substantial business which affects interstate and foreign commerce.

Rec. vol. I, doc. 9, ex. 2, at 3 (Plea Agreement and Statement of Facts Relevant to Sentencing). The plea agreement also provided, and Mr. Fowler does not dispute, that

> [o]n August 12, 1994 the defendant, LESTER FOWLER, was arrested in an alley in Denver, Colorado by officers of the Denver Police Department. At the time of his arrest the defendant knowingly possessed a firearm . . . .
> Mr. Fowler was previously convicted in case number 87-CR-1400 in the City and County of Denver for the crime of First Degree Criminal Trespassing, a felony, the punishment for which could exceed imprisonment for more than one year.

Id. at 3-4.

The district court sentenced Mr. Fowler to sixty-three months' imprisonment for Count I and sixty months' imprisonment for Count III, to be served consecutively, and ordered that he pay restitution in the amount of $15,819.68 and a special assessment in the amount of $100.00. During the sentencing hearing, at which Mr. Fowler's counsel

3

was present, the court advised Mr. Fowler of his right to appeal the court's sentencing decision. Mr. Fowler did not appeal.

## DISCUSSION

In this appeal, Mr. Fowler claims that his rights were violated in two different ways. First, he appears to claim that his § 922(g)(1) conviction violated his due process rights. Second, he argues that his Sixth Amendment right to effective assistance of counsel was violated.

## I.  Conviction under § 922(g)(1)

Mr. Fowler claimed in his § 2255 motion that he was not prohibited from carrying a firearm under § 922(g)(1) because his civil rights had been restored by operation of Colorado law upon his release from prison following his prior state conviction. However, the district court held that Mr. Fowler was procedurally barred from raising this claim on collateral review because he had "failed to demonstrate cause for his failure to present the claim on appeal and prejudice suffered therefrom or that a reviewing court's failure to review the claim will result in a fundamental miscarriage of justice." Rec. vol. I, doc. 10, at 2. The court went on to hold in the alternative that the claim failed on the merits because Mr. Fowler was indeed subject to prosecution under § 922(g)(1). We engage in

4

de novo review of the district court's rulings on legal questions in § 2255 proceedings. United States v. Kissick, 69 F.3d 1048, 1051 (10th Cir. 1995).

"Section 2255 motions are not available to test the legality of matters which should have been raised on direct appeal." United States v. Warner, 23 F.3d 287, 291 (10th Cir. 1994). Mr. Fowler pleaded guilty to a violation of § 922(g)(1). He did not object to his sentence, and he did not take a direct appeal. "A defendant's failure to present an issue on direct appeal bars him from raising the issue in his § 2255 motion, unless he can show cause excusing his procedural default and actual prejudice resulting from the errors of which he complains, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed. Id. We therefore consider whether Mr. Fowler has made the showing necessary to excuse his procedural default.

### A. "Cause"

Mr. Fowler argues that he has demonstrated cause for his failure to appeal this issue in that his trial counsel prevented him from doing so. "An attorney's error provides cause to excuse a procedural default only if the error amounts to constitutionally ineffective assistance of counsel." Rogers v. United States, 91 F.3d 1388, 1391 (10th Cir. 1996). We note at the outset that by arguing that § 922(g)(1) does not apply to him, Mr. Fowler raises a substantial question as to the adequacy of his counsel. Therefore, we first

5

consider whether § 922(g)(1) was erroneously applied to Mr. Fowler in order to assess whether there was cause to excuse his procedural default.

Title 18, United States Code, Section 922(g)(1) provides in relevant part:

It shall be unlawful for any person--

(1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1). The meaning of "crime punishable by imprisonment for a term exceeding one year" is clarified in 18 U.S.C. § 921(a)(20). First, "what constitutes conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." 18 U.S.C. § 921(a)(20). Second:

Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

Id.

Mr. Fowler was convicted in 1987 in a Colorado court of First Degree Criminal Trespass, a conviction which, the parties agree, would in the absence of a restoration of civil rights have satisfied the requirements necessary to trigger § 922(g)(1). Furthermore, the parties agree that Mr. Fowler's civil rights were indeed restored pursuant to Article

6

VII, Section 10 of the Colorado Constitution, which provides in relevant part that any person

> who was a qualified elector prior to . . . imprisonment, and who is released therefrom . . . by virtue of having served out his full term of imprisonment, shall without further action, be invested with all the rights of citizenship, except as otherwise provided in this constitution.

Colo. Const. art. VII, § 10. Mr. Fowler argues, therefore, that his 1987 conviction should

not have been used as a predicate for his § 922(g)(1) prosecution.

In its response to Mr. Fowler's § 2255 motion in the district court, the government

relied on Colo. Rev. Stat. § 18-12-108. That section was amended effective July 1, 1994,

several weeks before Mr. Fowler's arrest, to expand the definition of the crime of

"possession of weapons by previous offenders." Whereas before July 1, 1994 the statute

prohibited firearms possession by persons previously convicted of only particular kinds of

felonies, including burglary, arson and crimes of violence, Colo. Rev. Stat. § 18-12-108

(1986), the 1994 amendment widened the scope of the prohibition to include convictions

for any prior felony.[2] The government argued that, because the statute now prohibited

possession of a firearm by one who had previously committed <u>any</u> felony, including the

_____

[2]The amended statute provides:
A person commits the crime of possession of a weapon by a previous offender if the person knowingly possesses, uses, or carries upon his or her person a firearm . . . or any other weapon that is subject to the provisions of this article <u>subsequent to the person's conviction for a felony</u>, or subsequent to the person's conviction for attempt or conspiracy to commit a felony, under Colorado or any other state's law or under federal law.
Colo. Rev. Stat. § 18-12-108(1) (1995 Supp.) (emphasis added).

7

criminal trespass offense of which Mr. Fowler had been convicted, Mr. Fowler was specifically prohibited by Colorado law from possessing a firearm. Therefore, the government contended, his 1987 conviction could properly be used as a predicate conviction under 18 U.S.C. § 922(g)(1) because it did not fall within the category of excepted convictions described in 18 U.S.C. § 921(a)(20). The district court was persuaded by this argument, holding in its order denying the § 2255 motion that:

> Fowler was convicted of a crime punishable by imprisonment for a term exceeding one year. Although his civil rights had been otherwise restored, Colorado law expressly prohibited him as a convicted felon from possessing firearms. Colo. Rev. Stat. §18-12-108, as amended. Accordingly, Fowler had a prior felony conviction for purposes of 18 U.S.C. § 922(g)(1).

Rec. vol. I, doc. 10, at 2-3 (Order of the district court denying the § 2255 motion).

We disagree. We believe that the 1994 Colorado statutory amendment did not render Mr. Fowler's 1987 trespass conviction a proper predicate for a subsequent § 922(g)(1) prosecution because the amendment did not negate the full restoration of his civil rights under the prior law for the purposes of § 921(a)(20). The decisions of other circuits and our interpretation of the relevant statutes convince us that this is the correct application. Indeed, the government now responsibly concedes this in its Supplemental Brief. See Aple's Supp. Br. at 9.

This Circuit has held that the automatic restoration under Colorado law of various rights of citizenship to felons convicted of state offenses once they have completed their sentences constitutes a "restoration" for purposes of § 921(a)(20). United States v. Hall,

20 F.3d 1066, 1068-69 (10th Cir. 1994).  Such a restoration ordinarily precludes use of the prior conviction to support a § 922(g)(1) firearms possession charge.  18 U.S.C. § 921(a)(20).  However, this Circuit has never considered whether a conviction for which civil rights had been restored, but were later restricted by a subsequent legislative act prohibiting previously convicted persons from possessing firearms, can be used to support a § 922(g)(1) indictment.

The Ninth Circuit was confronted with this question in United States v. Cardwell, 967 F.2d 1349 (9th Cir. 1992).  There, the defendant had had his civil rights restored at the time of his release from prison, but a subsequently enacted state law amendment had barred felons from possessing firearms.  The government argued in Cardwell that the court should base its application of § 921(a)(20) on whether state law had prohibited the defendant from possessing a firearm at the time that he was alleged to have violated § 922(g)(1), rather than at the time his civil rights had been restored.  But the court rejected this argument, reasoning that:

> Section 921(a)(20) states that section 922(g)(1) applies if the pardon, expungement, or restoration of civil rights "expressly provides" that the defendant may not ship, transport, possess, or receive firearms.  The plain meaning of this use of the present tense is that the courts must determine the effect of the pardon, expungement, or restoration of civil rights at the time it is granted and cannot consider whether the defendant's civil rights later were limited or expanded.

Id. at 1350-51 (citation omitted).  We are similarly convinced that the use of the present tense in the quoted portion of § 921(a)(20) clearly indicates that we are to consider only

whether the law viewed at the time civil rights were restored "expressly provides" that the defendant may not ship, transport, possess, or receive firearms. See United States v. Haynes, 961 F.2d 50, 52-53 (4th Cir. 1992) (adopting the same interpretation of § 921(a)(20)); United States v. Traxel, 914 F.2d 119, 124-25 (8th Cir. 1990) (same). If the law did not so expressly provide, then it is irrelevant whether the defendant's civil rights were subsequently limited. Because there was no such limiting provision in Colorado law applicable to Mr. Fowler at the time his civil rights were restored, we conclude that the government improperly relied upon his 1987 trespass conviction to support his § 922(g)(1) prosecution.

As we have noted above, Mr. Fowler's counsel never raised the issue of the invalidity of the § 922(g)(1) charge during the plea proceedings, and he did not appeal the § 922(g)(1) conviction. When an attorney allows a defendant to plead guilty to a charge that is not a crime, substantial questions arise as to the constitutional sufficiency of his or her performance. Nevertheless, in instances in which a defendant is charged with more than one offense, a proper assessment of counsel's conduct requires consideration of the disposition of all of the charges against the defendant, not only the ones to which the defendant pleads guilty. The conduct of an attorney who allows a defendant to plead guilty to a charge that is not a crime will be deemed constitutionally deficient on collateral attack only if, upon consideration of all of the charges against the defendant, the conduct prejudiced the defendant. Cf. United States v. Andrews, 790 F.2d 803, 814 (10th

10

Cir. 1986) (holding that the defendant was not prejudiced by his attorney's conduct because, among other reasons, "there is every reason to believe that [the defendant], under the Plea Agreement, accomplished a net reduction in likely or possible felony charges"), cert. denied, 481 U.S. 1018 (1987). Thus, in terms of the procedural default inquiry in cases such as this, the resolution of the "cause" question depends upon the resolution of the "prejudice" inquiry. In order to determine whether Mr. Fowler may pursue his challenge to the § 922(g)(1) conviction through the instant § 2555 motion, we therefore proceed to the prejudice prong of the procedural default inquiry.

### B. "Prejudice"

We conclude that Mr. Fowler was not prejudiced by his procedural default because he substantially benefited from his guilty plea. This conclusion is supported by several state supreme courts and appellate courts which have held that if a defendant substantially benefited from a plea bargain that he entered into voluntarily and intelligently, even if he pleaded guilty to a charge that was not a crime, he is not permitted to collaterally attack that conviction. See Carter v. Neal, 910 F. Supp. 143, 148 (D. Del. 1995); Downer v. State, 543 A.2d 309, 312 (Del. 1988); People v. Bernard, 656 P.2d 695, 697 (Colo. 1983) (en banc); People v. Waits, 695 P.2d 1176, 1178 (Colo. Ct. App. 1984), rev'd on other grounds, 724 P.2d 1329 (Colo. 1986) (en banc); People v. Castro, 356 N.Y.S.2d 49, 50 (N.Y. App. Div. 1974), aff'd mem., 339 N.E.2d 620 (N.Y. 1975); People v. Burgan, 183

11

N.W.2d 413, 414 (Mich. Ct. App. 1971); People v. Foster, 225 N.E.2d 200 (N.Y. 1967). We believe that the substantial benefit that Mr. Fowler derived from pleading guilty to the § 922(g)(1) offense precludes a determination that any prejudice resulted from his counsel's failure to appeal the § 922(g)(1) conviction.

Mr. Fowler benefited from his guilty plea by avoiding prosecution for the more serious robbery and theft charges. Those charges, had Mr. Fowler been convicted of them, would have carried penalties substantially heavier than the sentences actually imposed. See 18 U.S.C. § 1951; 18 U.S.C. § 922(u); U.S.S.G. § 2B3.1; id. § 2K2.1; United States Sentencing Commission, Guidelines Manual, "Sentencing Table" (Nov. 1993). Furthermore, by pleading guilty Mr. Fowler received the benefit of a § 5K1.1 motion for reduction of sentence for substantial assistance and a government recommendation of a three-point reduction for acceptance of responsibility. We agree with the state courts that have held that "since the defendant . . . 'used the plea as a tool for avoiding a more serious conviction . . . it would be the height of sophistry to vacate the defendant's plea of guilty.'" Downer, 543 A.2d at 313 (quoting Bernard, 656 P.2d at 697). On the other hand, if the attorney had appealed the § 922(g)(1) conviction and had "won," the appropriate remedy would have been to vacate the entire plea agreement and

12

remand for a new trial, a result that probably would have inured to Mr. Fowler's detriment.[3]  See Santobello v. New York, 404 U.S. 257, 263 (1971).

Because we hold that no prejudice resulted from Mr. Fowler's failure to raise this issue previously, he is now procedurally barred from raising it on collateral review.  See United States v. Frady, 456 U.S. 152, 167-68, 175 (1982); Warner, 23 F.3d at 291.

## C.  "Fundamental miscarriage of justice"

Mr. Fowler contends that, even if he has not demonstrated cause and prejudice excusing his procedural default, this court is compelled to reach his substantive claim because a failure to do so would result in a fundamental miscarriage of justice.  See Warner, 23 F.3d at 291.  In this regard, he argues that his conviction under § 922(g)(1) was a legal impossibility because, as the government concedes, his civil rights had been restored without limitation.  The legal impossibility of guilt, he urges, renders him "factually innocent."

We have previously explained what is required to satisfy the "fundamental miscarriage of justice" standard:

---

[3]An alternative remedy, which may be imposed in some cases where a plea agreement is determined on appeal to be defective, is specific performance by the breaching party.  See Santobello, 404 U.S. at 263; United States v. Thomas, 580 F.2d 1036, 1038 (10th Cir. 1978).  However, in the instant case, where the issue is not a failure of the government to perform on a promise, that remedy could not sensibly have been imposed.

The standard for demonstrating a "fundamental miscarriage of justice" is, as the words connote, quite stringent. It is not enough for Appellant merely to establish that, absent the error, he would have been acquitted (i.e., his "legal innocence"). Rather, appellant must make a colorable showing of factual innocence. In the context of a noncapital case, this means appellant must make a colorable demonstration that he is factually innocent of the offense for which he was convicted.

Id. (citations omitted). In deciding whether the "narrow exception," McCleskey v. Zant, 499 U.S. 467, 502 (1991), applies in a particular case, we are guided by the "prototypical example" in which "the State has convicted the wrong person of the crime" such that "it is evident that the law has made a mistake," Sawyer v. Whitley, 112 S. Ct. 2514, 2519-20 (1992). Application of this exception is "rare" and limited to the "extraordinary case." See Schlup v. Delo, 115 S. Ct. 851, 864 & n. 36 (1995). Mr. Fowler does not call our attention to a single case in which a court has relied on the exception to consider the merits of an otherwise procedurally defaulted challenge to a guilty plea, and independent research reveals no such cases.

In light of this amplification of the meaning of the term, and the extreme limitations on its proper invocation, we hold that Mr. Fowler's predicament simply does not fit the description. First, although Mr. Fowler was "factually innocent" of the § 922(g)(1) charge, he admitted that he was not "factually innocent" of the more serious robbery and theft charges. Mr. Fowler admitted in the plea agreement that he and his accomplice had held two store employees at gunpoint and had stolen thirty firearms and $7500 in cash, conduct which the district court appropriately characterized at the

14

sentencing hearing as "extremely serious," Rec. vol. I, doc. 9, ex. 2. Second, the plea of guilty to the two firearms counts was plainly a <u>tactical decision</u> to avoid prosecution for the more serious crimes as to which he also admitted guilt. Third, after benefiting from his plea in this way, Mr. Fowler then failed to take a direct appeal. That too was probably a wise tactical decision. Had he prevailed on appeal, he would have had his plea vacated and again risked facing prosecution for the charges dismissed as a result of the plea. He now asks us on collateral review to excise from his plea agreement a conviction as to which he has admitted guilt, from which he has gained a favorable plea bargain, and which he has declined to challenge on direct appeal. Only a hypertechnical construction of "factual innocence" could lead us to conclude that the facts of this case constitute a fundamental miscarriage of justice. We decline to so hold.

## II.  Ineffective assistance of counsel

The second claim in Mr. Fowler's § 2255 motion was that he had received constitutionally ineffective assistance of counsel in violation of his Sixth Amendment rights. The government did not address this issue in its response to the § 2255 motion. In denying the motion, the district court did not explicitly rule on this issue, perhaps because it received so little attention in the briefs. However, the court did note that "Fowler was represented by competent counsel at all stages of the criminal action." Rec. vol. I, doc. 10, at 2. Even if this observation was not a ruling, we may still decide the issue because

15

"all of the pertinent facts are in the record before us."  See Laidley v. McClain, 914 F.2d 1386, 1394 (10th Cir. 1990).  Further, there is no need in considering this issue to engage in the kind of procedural default inquiry that we conducted above: the procedural bar rule does not apply to ineffective assistance of counsel claims raised in a defendant's first § 2255 motion.  United States v. Galloway, 56 F.3d 1239, 1241 (10th Cir. 1995).

The record is sufficient for us to conclude, analyzing the issue de novo, that Mr. Fowler did not receive constitutionally ineffective assistance of counsel, either in the decision to accept the plea bargain or in the decision not to appeal his § 922(g)(1) conviction, because he was not prejudiced by any error his counsel may have made, as required by Strickland v. Washington, 466 U.S. 668, 693 (1984).  A defendant who claims that he received ineffective assistance of counsel in entering a guilty plea must demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  See Hill v. Lockhart, 474 U.S. 52, 59 (1985); United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993), cert. denied, 114 S. Ct. 1236 (1994).  Such a showing "depend[s] largely on whether [he] likely would have succeeded at trial."  See Hill, 474 U.S. at 59.  Here, Mr. Fowler has made no more than the bare formulaic assertion that, but for his counsel's advice, he "would not have plead [sic] guilty or waived his appeal rights."  See Aplt's Opening Br. at 12.  However, we conclude that this claim is not credible given the seriousness of the

16

charges that Mr. Fowler avoided by not going to trial and the absence of any offered reason why he might have been confident of an acquittal.

For these reasons, and because we conclude, as discussed above, that Mr. Fowler was not prejudiced by the decision not to appeal, we reject his claim of ineffective assistance of counsel.

### III.  Conclusion

For the foregoing reasons, that is, because (1) Mr. Fowler is procedurally barred from raising his § 922(g)(1) claim and (2) he has not demonstrated the prejudice necessary to prevail on a claim of ineffective assistance of counsel, we AFFIRM the order of the district court.

The mandate shall issue forthwith.

Entered for the Court,


Robert H. Henry
Circuit Judge

Judge Anderson concurs in the Order and Judgment, except for Part I.C., and concurs in the disposition of the case set out in the conclusion.

17